# United States Bankruptcy Court
## Eastern District of Pennsylvania

In re:

    Victoria's Kitchen LLC,

                Debtor.

Case No. 25-13380-djb

Chapter 11

## Declaration of Debtor's Principal
## in Support of Petition and First Day Motions

### Background

1. I, Victoria A. Turner Tyson, am the Managing Member of Victoria's Kitchen LLC, the Debtor in this bankruptcy case.

2. I hold 60% of the membership interests in the Debtor. My husband, Kevin Tyson, holds the remaining 40% interest and helps me manage the business.

3. Together, Kevin and I oversee all aspects of the Debtor's operations, including its restaurant, kitchens, food truck, catering services, and staff.

4. I am familiar with the Debtor's operations, financial affairs, and obligations.

5. I make this declaration to provide an overview of the Debtor, the circumstances necessitating this bankruptcy case, and the factual basis for the relief requested in the Debtor's first day motions.

### The Business

6. The Debtor has grown over the past decade into a recognized Philadelphia-area food service company, offering catering, take-out, delivery, and food truck services.

7. The Debtor operates its main location at 7304 Ogontz Avenue, Philadelphia, PA, which serves as the center of its customer-facing operations.

8. The Debtor maintains its business office at 2001 East Tulpehocken St, Philadelphia, PA.

9. The Debtor uses two kitchens to support its business: the kitchen at the main location and a commissary kitchen at 5070 Parkside Avenue, Philadelphia, PA, which is used for catering preparation.

10. In addition, the Debtor operates a food truck that provides mobile catering services across the region.

11. Together, the main location, commissary kitchen, office, and food truck support the Debtor's operations and employ a staff of support personnel.

12. The business has continued to grow year over year and remains successful.

13. The Debtor's customer base, operations, and revenues demonstrate that it is a viable enterprise with significant going-concern value.

**Events Leading to the Bankruptcy Filing**

14. The Debtor's liabilities include debt owed to the Pennsylvania Department of Revenue for unpaid sales and use tax.

15. This debt arose from deficient accounting controls that failed to capture and remit required tax payments on a timely basis.

16. In connection with the sales and use tax debt, on December 19, 2024, Kevin and I were each charged in the Philadelphia Municipal Court with alleged violations of 18 Pa. C.S. § 3927 (Theft by Failure to Make Required Disposition of Funds), 72 P.S. § 7268 (Failure to Remit Sales Tax/File Return), and 18 Pa. C.S. § 903 (Conspiracy).

17. These charges have since been transferred to the Philadelphia Court of Common Pleas, where the matter is pending trial.

18. This bankruptcy filing is necessary to maintain operations while restructuring the large arrearage that accumulated because of those past deficiencies.

19. The Debtor intends to make full repayment of the sales and use tax arrears through its chapter 11 plan of reorganization.

## Need for Use of Cash Collateral

20. The Debtor's liabilities also include repayment of a business loan owed to the U.S. Small Business Administration (SBA).

21. The SBA loan is secured by a UCC lien against practically all of the Debtor's tangible and intangible personal property.

22. Because the SBA's lien extends to the Debtor's cash, deposit accounts, and receivables, essentially all available liquidity is subject to the lien.

23. The Debtor relies on daily cash receipts to fund payroll, purchase food and supplies, pay utilities, and operate its restaurant, commissary kitchen, and food truck.

24. Without prompt approval to use this cash, the Debtor would be unable to meet immediate expenses, which would result in the shutdown of operations, loss of employees, and permanent damage to its customer relationships and enterprise value.

25. The ability to use cash collateral on an interim and final basis is therefore critical to maintaining the Debtor's operations and preserving value of its bankruptcy estate.

### Need to Pay Critical Vendors

26. The Debtor depends on Crest Paper Company, Foods Galore, and SYSCO to provide critical supplies.

27. These vendors cannot easily be replaced, and interruption in their services would prevent the Debtor from preparing food, operating its locations, and fulfilling catering commitments.

28. Authority to pay these vendors for prepetition deliveries is necessary to ensure continuity of service, preserve customer and vendor relationships, and protect the Debtor's revenue stream.

### Need to Pay Employee Wages and Benefits

29. The Debtor employs support staff whose work is essential to daily operations. Many employees live paycheck to paycheck and would suffer immediate hardship if their wages were interrupted.

30. If payroll were missed, the Debtor would likely lose employees who are critical to continued operations.

31. Authority to pay prepetition wages and benefits is therefore necessary to preserve morale and avoid disruption to the business.

### Need to Maintain Existing Cash Management System, Business Forms, Bank Accounts, and Credit Card

32. The Debtor's existing bank accounts and cash management practices are efficient and familiar to management, employees, and vendors.

33. In the ordinary course of business, the Debtor relies on an American Express credit card to cover day-to-day incidental costs that cannot be anticipated in advance.

34. Altering these systems would create unnecessary confusion, administrative expense, and risk of business interruption.

35. Continuation of the Debtor's existing systems is therefore necessary to avoid disruption.

### Need for Continued Credit Card Processor and Food Ordering Platform Services

36. The Debtor relies heavily on credit card payments from its customers, which are processed by Square Inc. and Toast Inc.

37. The Debtor also relies on food ordering platforms provided by BentoBox, ChowNow, DoorDash, Grubhub and Uber Eats.

38. These platforms are critical sources of daily revenue.

39. If any credit card processor or food ordering platform withheld payments or refused to process transactions, the Debtor's cash flow would be immediately impaired.

40. Continuation of these services pending assumption or rejection of the contracts is therefore essential to stabilize operations.

### Need for Continuation of Utility Services

41. The Debtor requires uninterrupted utility service, including electric, gas, internet, and water, which are provided by Comcast, PECO, Philadelphia Gas Works, and the Philadelphia Water Department.

42. Termination of any of these services would make continued operations impossible.

43. The Debtor has historically maintained a consistent and reliable payment history with utility providers and has made timely payments on pre-petition obligations.

44. Authority for continued service is necessary to avoid irreparable harm to the Debtor's business and estate.

## Declaration

45. I declare under penalty of perjury that the above is true and correct to the best of my knowledge, information, and belief.

Date: August 26, 2025            /s/ Victoria A. Turner Tyson
                                 Victoria A. Turner Tyson